UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:25-cv-204-MOC

| | | |
|---|---|---|
| **JAMIE CHRISTOPHER MCKINNEY,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**DANIEL DALE, et al.,**<br><br>**Defendants.** | ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on its review of the docket in this matter and on Defendants' Motion for Summary Judgment [Doc. 22], Defendants' Motions to Seal [Docs. 25, 30[1]], and Plaintiff's failure to respond to the Clerk's Text-Only Notice [7/28/2026 Text-Only Notice].

## I. BACKGROUND

On July 1, 2025, pro se Plaintiff Jamie Christopher McKinney ("Plaintiff") filed this lawsuit pursuant to 42 U.S.C. § 1983 by unverified Complaint against Defendants Daniel Dale and Martin Frady, both Correctional Officers at Mountain View Correctional Institution ("MVCI") in Spruce Pine, North Carolina. [Doc. 1]. Plaintiff's individual capacity Eighth Amendment excessive force claims against the Defendants survived initial review. Plaintiff's remaining claims were dismissed. [Doc. 6].

On July 1, 2026, Defendants moved for summary judgment. [Doc. 22]. They argue that summary judgment should be granted because they did not use excessive force on the Plaintiff and

---

[1] Defendants' second Motion to Seal appears to be a verbatim copy of their first. [See Docs. 25, 30]. The Court, therefore, will deny the first as moot and address the second only.

because they are entitled to qualified immunity. [Doc. 23]. In support of their summary judgment motion, Defendants submitted a brief, their own Declarations, Declarations of Counsel and MVCI Triage Nurse Kiera Morrison, Plaintiff's Offender Information sheet, an Incident Report, and select medical records. [Docs. 23, 24-1 to 24-4].

On July 8, 2026, the Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 31]. The Plaintiff was specifically advised that he "may not rely upon mere allegations or denials of allegations in his pleadings to defeat a summary judgment motion." [Id. at 2]. Rather, he must support his assertion that a fact is genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." [Id. at 2 (citing Fed. R. Civ. P. 56(c)(1)(A))]. The Court further advised that:

> An affidavit is a written statement under oath; that is, a statement prepared in writing and sworn before a notary public. An unsworn statement, made and signed under the penalty of perjury, may also be submitted. Affidavits or statements must be presented by Plaintiff to this Court no later than fourteen (14) days from the date of this Order and must be filed in duplicate.

[Id. at 3 (citing Fed. R. Civ. P. 56(c)(4))].

On July 27, 2026, the Court's Roseboro Order, which was mailed to Plaintiff at his address of record, was returned undelivered. [Doc. 32]. The next day, the Clerk learned that Plaintiff had been released from custody and entered a Text-Only Notice requiring the Plaintiff to update his address within 14 days of the Clerk's Notice. [7/28/2026 Docket Entry & Text-Only Notice]. The

Clerk mailed the Text-Only Notice and another copy of the Roseboro Order to the Plaintiff at his address of record. [7/28/2026 Docket Entry].

The deadlines to respond to Defendants' motion for summary judgment and to notify the Court of Plaintiff's new address have passed. Plaintiff has not responded to Defendants' motion or notified the Court of his new address. As noted, Plaintiff's Complaint was not verified or otherwise submitted under penalty of perjury and, therefore, cannot be considered for their evidentiary value here. See Goodman v. Diggs, 986 F.3d 493, 498-99 (4th Cir. 2021) (holding that a district court is to consider verified prisoner complaints as affidavits on summary judgment "when the allegations contained therein are based on personal knowledge"). Thus, in terms of evidentiary forecast, the Defendants' is unrefuted.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n. 3.

The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt. Inc. v. J.D. Assoc.'s, LLP, 213 F.3d 174, 180 (4th Cir. 2000). The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007).

## III. FACTUAL BACKGROUND

The forecast of evidence shows the following.

Defendants Frady and Dale were Correctional Officers at MVCI at all relevant times. [Doc. 24-2 at ¶ 2: Frady Dec.; Doc. 24-3 at ¶ 2: Dale Dec.]. On June 11, 2025, Defendants were working the night shift at MVCI. [Id. at ¶ 3; Doc. 24-3 at ¶ 3]. At nearly 11:00 p.m. that night, Defendant Dale was doing lockdown on the third floor when he heard an offender, quickly determined to be the Plaintiff, inside a holding cell vomiting. [Doc. 24-3 at 3]. Defendant Dale looked inside the cell to find Plaintiff on the floor, shaking, and vomiting on himself, apparently under the influence

of an unknown substance. [Doc. 24-3 at ¶ 4; id. at 3].

Defendant Dale immediately called for assistance. [Doc. 24-3 at 3]. After Defendant Dale entered the cell, he found Plaintiff unresponsive and saw that he had defecated himself. [Id.]. Defendant Frady responded to the call for assistance. [Doc. 24-2 at ¶ 3]. When Defendant Frady arrived, he observed Plaintiff sitting on his shins and knees, leaning backwards with only his right arm inside of a toilet, propping himself up. [Id. at ¶ 4]. Plaintiff was covered in vomit and feces and appeared to be aspirating on his own fluids. [Id.].

Defendants moved the Plaintiff to the dayroom to allow for more space to administer CPR, if necessary. [Id. at ¶ 5; Doc. 24-3 at ¶ 5]. After Defendant Dale assessed the Plaintiff to confirm that he was breathing, Defendants lifted Plaintiff to a wheelchair. [Id.; Doc. 24-3 at ¶ 5; Doc. 24-3 at 3]. Other officers transported the Plaintiff to restrictive housing. [Doc. 24-2 at ¶ 6; Doc. 24-3 at ¶ 6]. Defendants returned to their posts. [Id.; Doc. 24-3 at ¶ 6]. Neither Defendant Frady nor Defendant Dale used any force on the Plaintiff. [Id. at ¶ 7; Doc. 24-3 at ¶ 7].

Once in restrictive housing, Plaintiff was placed in the shower to allow him to clean off the vomit and feces. [Doc. 24-1 at 7]. Plaintiff was given clean clothes and escorted to medical. [Id.]. Shortly after midnight, Plaintiff was examined remotely by Triage Nurse Morrison. [Id.]. Nurse Morrison noted that Plaintiff was alert and engaged in random outbursts of laughter during the examination. [Doc. 24-4 at ¶ 6]. Nurse Morrison observed that Plaintiff had a laceration on the crown of his head. [Doc. 24-4 at ¶ 5]. Plaintiff reported to her that he may have hit his head on his bunk bed; he did not attribute his injuries to an assault at this time.[2] [Id. at ¶ 7]. Nurse Morrison recommended that Plaintiff be transported to outside medical for evaluation because of the head

[2] Apparently, Plaintiff was placed in a holding cell in the first place because he was suspected of being under the influence of an unknown substance and needed to be watched closely during a "cool off period." [Doc. 24-1 at 9]. While in the cell, before Defendant Dale discovered him, Plaintiff had fallen from the holding cell bed to the floor and sustained a head injury. [Doc. 24-1 at 7].

injury. [Doc. 24-1 at 7].

In the emergency room at an outside hospital, Plaintiff "reluctantly" admitted to nursing staff that he used K2[3] earlier that evening at around 8:00 p.m. and reported feeling better, although he noted some bruising to his right eye and small lacerations on his scalp. [Doc. 26 at 1]. Plaintiff returned to MVCI at around 2:30 a.m. [Doc. 24-1 at 6]. In his statement regarding the incident, Plaintiff wrote only that "[he] was taken to the hospital and returned to the facility." [Id. at 12].

## IV. DISCUSSION

### A. Failure to Prosecute

Plaintiffs have a general duty to prosecute their cases. In this regard, a pro se plaintiff must keep the Court apprised of his current address. See Carey v. King, 856 F.2d 1439, 1441 (9th Cir. 1988) ("A party, not the district court, bears the burden of keeping the court apprised of any changes in his mailing address."). Where a pro se plaintiff has failed to notify the Court of his change of address, the action is subject to dismissal without prejudice for failure to prosecute. Accord Walker v. Moak, Civil Action No. 07-7738, 2008 WL 4722386 (E.D. La. Oct. 22, 2008) (dismissing without prejudice a § 1983 action for failure to prosecute under Rule 41(b) of the Federal Rules of Civil Procedure where the plaintiff did not notify the court of his new address un his release from jail). Plaintiff's Complaint, therefore, is subject to dismissal on this ground for his failure to prosecute this case, though such a dismissal would be without prejudice.

### B. Summary Judgment

A plaintiff's failure to respond to a summary judgment motion may constitute waiver or abandonment of a claim. Orbit Corp. v. Fedex Ground Package Sys., Inc., 2016 WL 6609184, at *15 (E.D. Va. Nov. 8, 2016) (collecting district court cases); Morgan v. City of Charlotte, No.

---

[3] K2 is a synthetic cannabinoid typically made by spraying lab-made chemicals onto paper or dried plant material.

3:22-cv-00003-KDB-DCK, 2023 WL 4002524 (W.D.N.C. Jun. 14, 2023) (collecting cases); Estate of Edgerton v. UPI Holdings, Inc., No. CCB-09-1825, 2011 WL 6837560, at *4 (D. Md. Dec. 28, 2011). Because Plaintiff has abandoned his claim by failing to respond to Defendants' motion, the Court will grant Defendants' motion for summary judgment on this ground.

Even if Plaintiff had not abandoned his claim or failed to prosecute this action, the Court would nonetheless grant summary judgment for Defendants. The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component – that the harm inflicted was sufficiently serious – and a subjective component – that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

This subjective standard requires proof of malicious or sadistic action by a prison official to make out an excessive force claim. This is because prison "[o]fficials are entitled to use appropriate force to quell prison disturbances." Williams, 77 F.3d at 761. "Because officials must act 'in haste, under pressure, and frequently without the luxury of a second chance,' deliberate indifference is not a sufficiently rigorous standard." Id. (citing Whitley, 475 U.S. at 320). "Rather, in these circumstances, in order to make out an Eighth Amendment claim, a prisoner must demonstrate that officials applied force maliciously and sadistically for the very purpose of causing harm." Id. (internal quotations and citation omitted).

Here, the forecast of evidence shows that Defendant Dale discovered Plaintiff in his cell vomiting on himself and quickly called for assistance at some point after Plaintiff had fallen from the bed to the floor, injuring his own head. The forecast of evidence shows that Defendant Frady

promptly responded, and both Defendants moved Plaintiff out of the cell into the dayroom in case CPR was necessary. The forecast further shows that once Defendant Dale confirmed that Plaintiff was breathing the Defendants lifted Plaintiff into a wheelchair and that other officers transported Plaintiff to restrictive housing where he received a shower and medical care.

From this forecast of evidence, a reasonable jury could not conclude that Defendants applied force maliciously and sadistically for the very purpose of causing harm. Rather, the forecast of evidence shows that Defendants rendered aid to the Plaintiff after he had ingested an unknown substance that caused him to vomit and defecate on himself. As such, there is no forecast evidence from which a reasonable jury could conclude that Defendants used excessive force on the Plaintiff in violation of Plaintiff's Eighth Amendment rights.

Because there is no genuine issue for trial, the Court will grant summary judgment for Defendants. Moreover, because the forecast of evidence does not support that a constitutional right was violated, Defendants would also be protected by qualified immunity. See E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018).

**C. Motion to Seal**

Defendants move to seal medical records of the Plaintiff that they submitted in support of their summary judgment motion. [Doc. 30]. Defendants argue that that these records, which were provided by the North Carolina Department of Adult Correction during discovery, are deemed confidential under state law. [Id. (citing N.C. Gen. Stat. § 143-518 and Fed. R. Civ. P. 5.2)].

Before sealing a court document, the Court must "(1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." Ashcraft v.

Conoco, Inc., 218 F.3d 288, 302 (4th Cir. 2000). In the present case, the public has been provided with adequate notice and an opportunity to object to the Defendants' motion. Defendants filed their motion on July 2, 2026, and it has been accessible through the Court's electronic case filing system since that time. Moreover, the public's right of access to the subject records is substantially outweighed by the competing interest in protecting the substance of such information, including the Plaintiff's interest in keeping his medical records private and confidential. Having considered less drastic alternatives to sealing these records, the Court concludes that sealing them is necessary to protect the implicated privacy interests. As such, the Court will grant Defendants' motion to seal and order that Docket Nos. 26 through 29 remain sealed.

## V. CONCLUSION

For the reasons stated herein, the Court will grant Defendants' motion for summary judgment and grant Defendants' motion to seal.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendants' Motion for Summary Judgment [Doc. 22] is **GRANTED**, and this action is hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Seal [Doc. 25] is **DENIED as moot**, Defendants' Motion to Seal [Doc. 30] is **GRANTED**, and Docket Nos. 26 through 29 shall remain sealed.

The Clerk is instructed to terminate this action.

**IT IS SO ORDERED**.

Signed: September 14, 2026

Max O. Cogburn Jr.
United States District Judge